[Crim. No. 4458.   Second Dist., Div. Three.   July 27, 1950.]

THE PEOPLE, Respondent, v. HARRY ISAAC
WOLFEART, Appellant.

Harry I. Wolfeart, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Donald D. Stoker,
Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was charged with arson in two
counts and with a prior conviction of burglary. He admitted
the prior conviction. He was tried by a jury on the charges
of arson. The jury convicted him as to count one and dis-
agreed as to count two. Count two was then dismissed. He
appeals from the judgment. Count one alleged that on August
16, 1949, defendant set fire to a dwelling house at 1138 Wash-
ington Boulevard, Los Angeles.

The fire occurred about 4:30 a. m. on Tuesday, August
16, 1949. It was of incendiary origin. It was started with an
inflammable liquid. Defendant contends there was no evidence
to connect him with the offense.

The building burned consisted of a store with a five-room
residence in the rear. A Mrs. Summers, with her three children,
occupied four rooms. Mrs. Greenberg occupied one room. At
one time defendant and Mrs. Greenberg were planning to be
married. Defendant stayed on the premises several nights

after May 27, 1949. He slept there overnight on the Saturday preceding the fire. On Sunday he and Mrs. Greenberg quarreled. Mrs. Greenberg left and when she returned defendant told her that he did not believe her statement that she had gone to see a lady friend. He said, ''I have seen you with another man there.'' Mrs. Greenberg told him he had better leave. He grabbed her, threw her on a chair, and slapped her face with his hand. She ran out to call the police. She next saw defendant the following day. He came to get his clothes. She refused to give them to him because he owed her money. Defendant said, ''If you are not going to give me the clothes, I know how to get it. I have no home. You are not going to have no home.''

The same day defendant told Mrs. Summers he wanted his things. She told him to go away. She told him if he did not leave she would call the police. Defendant said, ''Call them. I will fix you.''

About 7 or 7:30 p. m. on August 15, defendant attempted to buy some Butane at a service station, saying that he wanted it for a stove in a trailer. When he could not obtain Butane, he purchased a half gallon of gasoline, saying that he wanted it with which to wash his hands. About 9:10 that evening there was a fire in a pile of rubbish at the side of the house at 1138 Washington Boulevard. Shortly before that Mrs. Summers' daughter saw appellant coming along the side of the house. Mrs. Summers called the fire department which responded and extinguished the fire.

About 3 o'clock in the morning of August 16, Mrs. Summers heard someone alongside the house. She arose and saw defendant go by. He was going toward the back gate. She heard the back gate open and someone try the rear door. She heard the gate open again and then heard footsteps going back in the opposite direction. About 4:20 she heard crackling noises coming from the side of the kitchen. She got up, opened the bedroom door, and as she did so smoke hit her in the face. She closed the door, called the fire department, went to see where the fire was located, and saw the kitchen door aflame.

Police officers located defendant about 5:30 a. m. and found him asleep on a mattress in his shed. He was fully clothed. The odor of petroleum or petroleum products emanated from his coat, particularly from the sleeve. Defendant told police officers that he had bought the half gallon of gasoline to wash his hands; that he had really gone to buy some Butane inasmuch as he was contemplating purchasing a house trailer and

wanted some Butane for the stove; that the trailer was in Compton. He was asked why he wanted to buy the Butane for the stove if the trailer was in Compton. Later he said he just wanted to try the stove out and later that he did not go to the service station to buy Butane at all; that he went to buy gasoline to wash his hands and had just inquired about Butane to see if they had it so that he could get it when he needed it. He was asked where the can was in which he had obtained the gasoline. He answered that he had thrown it away. The can could not be found. Defendant told the officers he could not remember where he had thrown it. About a teacup full of gasoline was used to start the fire. The fire had burned at least 45 minutes and possibly as long as $2\frac{1}{2}$ hours.

Defendant testified that he had an argument with Mrs. Greenberg on August 14; that he had been living at 1138 Washington Boulevard for some time before that; that during the argument he told Mrs. Greenberg "You should get burned for my part"; that he did not refer to the house; that he "just cursed her to get burned because she was mean to me."

A verdict cannot be set aside on appeal unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to sustain the verdict. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Daener*, 96 Cal.App.2d 827, 832 [216 P.2d 511].) The evidence reasonably justified the conclusion of the jury that defendant set the fire. (*Cf.*, *People* v. *Neal*, 97 Cal.App.2d 668 [218 P.2d 556].)

*People* v. *Draper*, 69 Cal.App.2d 781 [160 P.2d 80], and *People* v. *Gibbons*, 93 Cal.App.2d 28 [208 P.2d 411], cited by appellant, are not helpful. In those cases it was held that upon no hypothesis was there sufficient evidence to sustain the verdict. Manifestly where the question is the sufficiency of the evidence to sustain the verdict, each case must be considered on its own facts.

Affirmed.

Shinn, P. J., and Wood, J., concurred.