[Crim. No. 13802. Second Dist., Div. One. Feb. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER ELLIS COLE, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—Walter Ellis Cole appeals from a judgment of conviction of arson (Pen. Code, § 447a) in a nonjury trial.

A résumé of some of the facts is as follows:

Defendant resided with his wife and three children in the lower apartment of a two-story stucco duplex located at 1219 East 33d Street in Los Angeles. The apartment was rented from Shedrick Johnson, who lived in a single family residence at the front of the property. Patricia Ann Hicks lived in the upper duplex apartment with her baby and Elmer Johnson, son of the landlord. A few minutes before noon on October 14, 1966, Cole left his apartment in the company of his cousin, Frank Carter, and another man. Shortly thereafter his wife departed with the children to visit the doctor and she locked the door. At about 1 p.m. Patricia Hicks saw Cole and Carter return in an automobile; Cole went into his apartment while Carter remained in the car. About five minutes later Patricia Hicks heard the front door of the lower apartment close again and believed that Cole then left the apartment. Only five or ten minutes thereafter she went out on her porch, saw smoke coming from the living room windows of the Cole apartment, and immediately went downstairs to find someone to call the fire department but learned that a man already had summoned firemen. When the firemen arrived a few minutes later they entered the front door and confirmed that no one was in the apartment.

Ralph L. Wheeler, Battalion Chief of the Los Angeles Fire Department, arrived after another fire unit already had reached the scene, but found smoke and low flames still coming from the apartment window. He entered the main door and found one fire in the living room and another fire, without physical connection, in the bedroom; he believed these fires were separately caused.

Delbert H. Winter, an arson expert with eight years of specialized experience on the Los Angeles City Fire Department, investigated the building when the fire had been burning for 15 or 20 minutes. The physical evidence indicated to him that two separate and distinct fires had been started on the premises within minutes of one another. In his opinion, each fire was caused by human hands using an open flame. It appeared that the living room draperies and a bedroom mattress were burned, while damage to the building was limited to smoke, heat and wood char.

Shedrick Johnson, who had given no one permission to start a fire in the apartment, had set Cole's furniture and furnishings out in the yard, but Cole failed to pick them up. About 10 days later the landlord's daughter, Mary Johnson, saw

Cole in a parking lot and told him that her father wanted to see him. Defendant responded in abusive language that he wanted his tables back from her father or else he was going to "burn that damn place down." On or about October 27, 1966, Cole came to the door of the upstairs apartment with his cousin, Frank Carter, and spoke to Patricia Hicks. He said that he was looking for two tables and two lamps which belonged to him. When she told him that the furniture had been set outside for him, he said that it was not all there and that he had burned the building down once and if his belongings were not returned he would do it again.

Defendant testified in his own defense that on October 14, 1966, he had left the car for his wife to use knowing that she had a medical appointment for the children, and he had gone to the local pool hall where he played pool all afternoon with Frank Carter. Benjamin Williams, owner of the pool hall, confirmed that appellant and Carter arrived there about noon on that date and that they had played pool a long while. As far as he could remember, Cole did not go out again before he left, but they were playing in the back room so Williams could not observe them continuously and he was uncertain when they left.

Carter testified that Cole could not have started the fire because they were together all afternoon. When he, Carter, left for work around 2:30 p.m. he had stopped at his grandmother's house and she told him that Cole's apartment had burned, so he returned to pick up Cole and together they arrived at the apartment around 3 p.m. Cole denied the conversation with Patricia Hicks about his furniture, but acknowledged that he spoke to Mary Johnson about certain items of furniture that he wanted, although he had never threatened to burn the place down. He testified that he moved to a furnished apartment after the fire and didn't need the burned furniture in the yard. Johnson had set some of the furniture out in the yard, but not the two tables and lamps which Cole particularly desired to retrieve.

Appellant now contends that the evidence was insufficient to sustain the judgment, especially because the testimony of Patricia Hicks was inherently improbable. His contentions are devoid of merit.

 Appellant claims that Patricia Hicks was an unreliable witness because she testified that she was watching television and ironing when appellant left and revisited the apartment, that she could not have been watching, and that

she exhibited confusion as to the date on which these events occurred. The evidence as set forth above however is adequate to sustain appellant's conviction, and Patricia Hicks' testimony discloses no significant uncertainty or unreliability. She testified that it was her custom to step out on her porch to investigate sounds, even though she might be ironing and watching television as she was on the date of the crime. She was uncertain only about the date when appellant returned to talk to her about the furniture, which might have been October 27, but that she could ascertain the date by reference to a doctor appointment.

■ Testimony may be discarded as inherently improbable only when it involves a claim that something has been done that would seem impossible or unlikely under the circumstances, or something only a mentally disordered person would do. (*People* v. *Guerrero*, 207 Cal.App.2d 400, 403 [24 Cal.Rptr. 553] ; *People* v. *Tereno*, 207 Cal.App.2d 246, 251 [24 Cal.Rptr. 501].) ■ The falsity of such statements must be apparent without resort to inferences or deductions before they may be rejected. (*People* v. *Lyons*, 47 Cal.2d 311, 320 [303 P.2d 329] ; *People* v. *White*, 43 Cal.2d 740, 747 [278 P.2d 9].) There is no substantial weakness in Patricia Hicks' testimony which might render it inherently improbable. The trial court resolved the evidentiary conflict between her testimony and appellant's defense and substantial evidence supports its conclusions.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 4, 1968.