[Crim. No. 13485.   Second Dist., Div. Four.   Mar. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH BURTON EUELL, Defendant and Appellant.

Olive Starkweather, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was convicted of three counts of attempted grand theft from the person (Pen. Code, §§ 664; 487, subd. 2). By stipulation the trial was by the court, upon the preliminary transcript as the only evidence on the issue of guilt. The court also found true the allegation that defendant had previously been convicted of grand theft and attempted grand theft in San Francisco, and attempted grand theft person in Sacramento. Defendant was sentenced to state prison, the terms to run concurrently. This appeal is from the judgment.

The only evidence is the testimony of Police Officer Oscar O'Lear who, with his partner, observed defendant for about 45 minutes or an hour in downtown Los Angeles.

At Seventh and Broadway defendant, carrying a sweater over his left arm, moved into a group of passengers loading onto a bus. He stepped alongside a woman who had a purse on her arm, and placed his sweater part way over the purse. As the woman boarded the bus defendant backed away.

When the next bus arrived for loading defendant repeated this performance.

Then he crossed the street and approached another woman the same way.

Next defendant proceeded to Seventh and Spring, moved into a group of passengers, backed away, and walked to Fifth and Broadway, where he moved into two groups of passengers loading on busses. Then defendant entered a store, moving up to women who were shopping.

Back at Seventh and Broadway, defendant moved behind a woman, placed his sweater partly over her open-type purse, and placed his hand in the purse. The woman entered the bus and defendant backed away.

He joined a second line of boarding passengers, placed his sweater partially over a purse and opened the clasp. The woman glanced at defendant and he walked away.

When another bus arrived defendant boarded it and stood alongside of a woman passenger in the crowded aisle. Defendant opened her purse and put his hand partially into it. At this time the bus jerked, and the woman glanced down and shut her purse. The officers then arrested defendant and took the name of the woman whose purse had been opened.

Shortly afterwards at police headquarters one of the officers "advised defendant he could have an attorney present at the time of the interview, that if he couldn't afford an attorney, an attorney would be obtained for him. . . . he could remain silent, he need not make any statement, and any statement he made would be held against him." Defendant said he understood.

The officer then described to defendant everything he had seen defendant do. The latter smiled and said, " 'Everything you say is true. I did everything you told me, that you told me that I done.' " Then he said he was trying to make enough money to go back to San Francisco.

Officer O'Lear's observations gave him legal cause to make an arrest. His testimony made a prima facie case, which is sufficient to support the conviction. The inference is inescapable that defendant was attempting theft on each occasion when he unclasped or placed his hand in a woman's purse.

Defendant's counsel on appeal argues that the information, charging three counts, is defective because at the close of the preliminary examination the magistrate dismissed the first two counts and held defendant to answer on the third count only. The district attorney nevertheless filed a three-count information.

Assuming that counsel's theory is correct—that the first two attempts were not sufficiently related to the "transaction" in count III to be included in an information after defendant had been held to answer on count III only (see *Mulkey* v. *Superior Court*, 220 Cal.App.2d 817 [34 Cal.Rptr. 121])—defendant may not raise that point for the first time on appeal. Penal Code section 995 provides for setting aside the information upon defendant's motion upon the ground that he

had not been legally committed by the magistrate. That motion must be made prior to plea. (*People* v. *Taylor*, 250 Cal.App. 2d 367, 370 [58 Cal.Rptr. 269].) Section 996 provided (as worded prior to the 1967 amendment): ''If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in the last section.''

In this case no motion to set aside the information or any part of it was made in the superior court.

The language of the Supreme Court in *People* v. *Harris*, 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609], is here pertinent: ''The Legislature has provided defendants in criminal cases with a statutory opportunity to test the legality of their commitment, and it is not an undue burden to expect defendants who wish to raise this issue to proceed by filing a timely motion under section 995. When an illegally committed defendant pursues his statutory remedy, the courts will, without hesitation, invalidate his commitment. (*Bogart* v. *Superior Court* (1963) *supra*, 60 Cal.2d 436 [34 Cal.Rptr. 850, 386 P.2d 474].) But to permit a defendant to question the legality of his commitment for the first time on appeal would enable him to secure a reversal of his judgment of conviction even though he was found guilty after an errorless trial. By enacting section 996 the Legislature clearly foresaw that such eventuality would place an undue burden on the administration of justice. Indeed, many defendants who may be illegally committed choose to forego their statutory remedy, recognizing that a successful motion under section 995 will operate only to delay the date of trial, since the prosecution remains free to file a new complaint and bring a new information. (Pen. Code, § 999; *People* v. *Joseph* (1957) 153 Cal.App.2d 548, 551-552 [314 P.2d 1004].) By reaffirming our cases that require such a motion, we give effect to a statutory pattern that affords an accused full opportunity to question the legality of his commitment, but in the interest of the efficient administration of justice conditions that right upon its timely assertion.''

██ There is no basis for defendant's present contention that he should have a new trial upon the theory that he was inadequately represented in the trial court. The fact that counsel did not engage in tactics which would have prolonged the proceedings does not indicate either lack of competence or lack of diligence in the protection of his client. A motion to set aside counts I and II of the information, if successful, would have left the prosecution free to file over. It is apparent

that the People had at least one other witness who was not used at the preliminary—Officer O'Lear's partner—who might have strengthened the case. Defendant personally waived a jury trial and consented to a submission on the transcript after the procedure had been explained to him. Doubtless he did so because he recognized that he would gain no advantage by requiring that the prosecution's witness be present in person.

The trial was conducted fairly and without error.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.