[Crim. No. 5227. Third Dist. Dec. 8, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL SAVALA, Defendant and Appellant.

416

## COUNSEL

James D. Walsh, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Russell L. Moore, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PIERCE, J.**—Defendant convicted of two counts of first degree robbery and one count of first degree burglary appeals from the judgment entered December 10, 1968, upon a jury verdict.

Defendant Savala's five contentions will be considered under separate captions. Two contentions must be sustained. Accordingly, the case must be remanded for the limited purposes of (1) consideration for probation, and (2) resentencing pursuant to the rules established in *People* v. *Floyd* (1969) 71 Cal.2d 885 [80 Cal.Rptr. 22, 457 P.2d 862]. Certain specific facts will be stated under the separate captions. General facts are:

At about 9:30 p.m., Friday, August 16, 1968, the combined home and office of Mrs. Juan Molina in Woodland was unlawfully entered by

defendant, one Walter Sanchez and one or two other men. Among other things, a cash box containing $4,200 was taken. Mrs. Molina's residence was on the premises of a labor camp she operated, and at the time of the offense was occupied by her grandson, Juan Molina, and her nephew, Isidro (Chilo) Raya. Mrs. Molina had gone into town for a few minutes and before leaving had instructed the boys to let no one into the house.

The boys were watching television when they heard dogs barking. Juan looked out of the office window and saw shadows and two men moving about outside. Both boys ran outside and were grabbed and brought back inside. Defendant and another man held Juan down on the office floor, threatened to kill him if he did not tell them where the money was hidden. Juan testified that defendant, whom he had recognized and whom he identified in court, brandished a knife with a fixed six-inch blade in support of his threats and the other man held a gun. The cash box containing the Saturday payroll, $3,000 of which Mrs. Molina had obtained from the bank that afternoon, was accidentally found in the office Coke machine where it had been hidden. Juan was struck several times and then bound by the man. A diamond ring valued at $800 or $900 was taken from Juan's pocket.

In the front room of the residence Chilo was being held down by another man. Chilo testified that defendant was unarmed but a knife and gun were in the possession of the others. His testimony otherwise corresponded to that of Juan's. Chilo's pockets were emptied and his hands tied.

The intruders fled when the sound of Mrs. Molina's returning car was heard. Defendant and Walter Sanchez were arrested together in downtown Sacramento a month later.

The defendant testified that he had left the labor camp Friday before noon and was in Sacramento at the time of the offense. No corroboration of his alibi was presented.

### CONVICTION FOR ROBBERY OF FIRST DEGREE

 No express finding was made by the jury that defendant was guilty of first degree robbery. Defendant urges as a consequence that judgment could not legally be entered for robbery in a degree greater than the second degree. But robbery in the first degree was charged in both robbery counts (and burglary first degree in the third count). All verdict forms signed find defendant guilty as charged in the information. These indicate to us that the properly instructed jury returned first degree robbery verdicts. It thus fulfilled the requirement of Penal Code section 1157, specifying that the jury shall, if a crime is divided into degrees, find the degree of which he is guilty—absent which he shall be deemed guilty of

the lesser degree. ■ "The form of the verdict is regarded as immaterial so long as the jury's intention to convict of the crime charged under the allegations of the information is unmistakably expressed." (*People* v. *De Arkland* (1968) 262 Cal.App.2d 802, 818-819 [69 Cal.Rptr. 144].)

■ Moreover, defendant's only defense was an alibi. It was undisputed as to count I and count II that a robbery with a dangerous or deadly weapon (and therefore first degree robbery) had been committed. (Pen. Code, § 211a.) Furthermore, as to those counts defense counsel stipulated at trial that each was first degree robbery. (*People* v. *Kelly* (1960) 184 Cal.App.2d 611, 615-616 [7 Cal.Rptr. 600].)

## CONTENTION OF INADEQUACY OF COUNSEL

■ Defendant urges he was denied adequate representation by counsel in the trial court. The contention is based upon counsel's failure to move for a new trial. In *People* v. *Edgmon* (1968) 267 Cal.App.2d 759, 766-770 [73 Cal.Rptr. 634], we held (in a case where there had been a first degree murder conviction) that there might occur circumstances where a failure by counsel to make such a motion would constitute reversible error. In that opinion we discussed the standards framed in *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]. We pointed out that the statement most frequently quoted from Ibarra is that lack of competence or diligence must be such as to reduce the trial to a "farce or sham" (*id.* p. 767), but that fault by counsel which effectually withdraws a crucial defense (*id.* p. 767) could also be grounds for reversal. In *Edgmon,* where no new trial motion had been made, we *did not* find reversible error. Here, the right to make a new trial motion was explained to defendant by the trial court and that right was expressly waived. Despite defendant's earnest arguments that this is a close case, we do not so regard it. Defendant was known to both victims and identified in court. We do not find it significant that five hours elapsed during the jury's deliberations. That period included a rereading of testimony and time out for dinner. We envisage a conscientious jury rather than a careless or incompetent defense attorney.

## ASSERTED MISCONDUCT BY THE PROSECUTOR

■ Defendant having taken the stand, his prior felony conviction became admissible for impeachment purposes on cross-examination. He contends the prosecuting attorney was guilty of misconduct in arguing his unreliability as a witness on that ground. Defense counsel in his argument reminded the jury that the conviction was for the statutory rape by defendant (then 19) of a willing almost 18-year-old girl and urged its minimal impact upon defendant's credibility. We agree that there were

sounder grounds in this case upon which to challenge defendant's credibility. The prosecutor had the law on his side. (Evid. Code, § 788; *People* v. *Coffey* (1967) 67 Cal.2d 204, 218 [60 Cal.Rptr. 457, 430 P.2d 15].) The trial court instructed the jury of the limited purpose to which it might properly put evidence of the prior conviction. The prosecutor was overly enthusiastic regarding the impeachment value of this prior conviction. We do not deem it possible that the jury was prejudicially affected.

## DEFECT IN SENTENCING

■ In compliance with Penal Code section 654, the trial court imposed sentence only on count I, first degree robbery, although judgment was entered as to the three counts charged. The judgment recited as to each count: (1) that defendant had been charged with and had admitted a prior felony conviction for statutory rape; and (2) that "[d]efendant was charged and admitted being, or was found to have been armed with a deadly weapon . . . within the meaning of Penal Code Sections 969c and 3024." Penal Code section 3024 imposes minimum terms of sentence "notwithstanding . . . any provision of law specifying a lesser sentence" in certain cases.

Penal Code sections 3024 and 12022 were held inapplicable to convictions for first degree robbery, as well as to conviction for certain other crimes which included as an element thereof the use of a deadly weapon, in *People* v. *Floyd, supra,* 71 Cal.2d 879 at pages 881-885, *People* v. *King* (1969) 71 Cal.2d 885 [80 Cal.Rptr. 26, 457 P.2d 866], and *People* v. *Hogan* (1969) 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868]. Section 12022 provides that any person convicted of committing a felony while armed with a deadly weapon as defined by subdivision (f) of section 3024[1] may receive additional punishment of from five to ten years. Second, third, fourth and subsequent convictions receive progressively more severe additional punishments. The punishments run consecutively to the punishments otherwise imposed by law.[2]

In *Floyd* it was held that sections 3024 and 12022, both general statutes relating to punishment must give precedence to section 213, a special

[1]Section 3024, subdivision (f), includes inter alia in its definition of deadly weapons any knife having a blade longer than five inches.

[2]*Floyd* dealt with a pre-1968 version of section 12022. Footnote 3 in *Floyd* (*id.* p. 882) notes the 1968 amendment was said to be "to increase the number of weapons included." Although the case before this court involves a case tried with the 1968 section in effect that will not alter the effect of *Floyd.*

statute relating to punishment for robbery. It was also held that the judgment in *Floyd* (and those in *King* and *Hogan*) must so provide.[3] *Floyd* also stated that in addition to an express statement of the nonapplicability of sections 3024 and 12022, the judgment should state whether defendant was armed with a deadly weapon within the meaning of Penal Code section 1203. This express determination is to be made by the trial court. (*People* v. *Brewster* (1969) 276 Cal.App.2d 750, 754 [81 Cal.Rptr. 237], hear. den.)

### DEFENDANT'S ELIGIBILITY FOR PROBATION

■ Penal Code section 1203, covering circumstances when a convicted defendant is, and is nct, eligible for probation, is a maze of provisions, exceptions to those provisions, limitations and generally confusing statements. In paragraph three the Legislature expresses a public policy. That declared policy is that no judge shall grant probation in certain cases if the convicted defendant was armed with a deadly weapon or inflicted great bodily injury or torture. There is an exception written into paragraph three in its first sentence. A judge *may* grant probation "in unusual cases where the interest of justice demands a departure from the declared policy." Nothing is said in the third paragraph regarding "concurrence of the district attorney."

We turn to the fourth paragraph. It relates to certain crimes (of which robbery is not one) where generally a court may not grant probation if the convicted defendant was armed with a deadly weapon or inflicted great bodily injury or torture "nor to any [defendant] unless the court shall be satisfied that he has [not] been twice previously convicted of felony . . . ." Written into this paragraph is an exception also. The paragraph commences, "Except as hereafter provided in this section . . . ." But the exception is stated in the next succeeding (i.e., the fifth) paragraph. It reads: "In unusual cases, otherwise subject to the preceeding paragraph, in which the interests of justice would best be served thereby, the judge may,

---

[3]The 1969 Legislature added section 12022.5 to the Penal Code. It is not involved in this case. It provides inter alia, that "[a]ny person who uses a firearm in the commission . . . of a robbery [and other specified crimes] upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of . . ." (There then follows provisions for various minimum periods of punishment depending upon whether a first, second, third, fourth and subsequent conviction is involved.) The section provides that the additional periods shall run consecutive to and not concurrently with the sentence otherwise specified for the specific crime charged. The section concludes with *"This section shall apply even in those cases where the use of a weapon is an element of the offense."* (Italics ours.) We do not have to cope with the effect of this new law on the rule of the *Floyd* case.

*with the concurrence of the district attorney,* grant probation." (Italics ours.)

The trial judge who sentenced defendant denied probation. In doing so he expressly stated that he could not do otherwise; that defendant was eligible for probation only with the district attorney's concurrence, which that officer intended to withhold. Defendant argues that that portion of section 1203 which requires concurrence by the district attorney is an attempt to vest judicial power in a nonjudicial officer and therefore is unconstitutional. (Cal. Const., art. VI, § 1.)

We do not reach that point on this appeal. Should the court determine this to be an "unusual case" where the defendant should be granted probation in the "interest of justice," it does not need concurrence by the district attorney. The reason it does not is that this is a case falling within the third paragraph of section 1203 and not the fourth paragraph. (*People v. McGill* (1968) 257 Cal.App.2d 759, 763-765 [65 Cal.Rptr. 482]; *People v. Hollis* (1959) 176 Cal.App.2d 92, 99-100 [1 Cal.Rptr. 293], hear. den.)

The superior court shall make a determination as to whether the case is an unusual one within the meaning of the third paragraph of Penal Code section 1203, and therefore whether defendant shall or shall not be granted probation. The recitals in the judgment of conviction that defendant was armed with a deadly weapon should be modified to provide that at the time of the commission of the offense sections 3024 and 12022 of the Penal Code were inapplicable but defendant was armed within the meaning of section 1203 of the Penal Code. The judgment should also specify the nature of the weapon. (*People v. Floyd, supra,* 71 Cal.2d 879; *People v. Brewster, supra,* 276 Cal.App.2d 750.)

Judgment is reversed and the cause remanded for the purpose of making the determination as to whether the case is an unusual one within the meaning of the third paragraph of Penal Code section 1203 and thus whether probation shall or shall not be granted, and for resentencing in accordance with the views expressed herein.

Friedman, J., and Janes, J., concurred.