[Crim. No. 15794. In Bank. Jan. 5, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
HARVEY LYNN BEAGLE II, Defendant and Appellant.

## COUNSEL

Arthur Shivell for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Israel Butler, Frederick R. Millar, Jr., and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant Harvey Lynn Beagle II was convicted by a jury of one count of attempted arson (Pen. Code, § 451a) and one count of arson (Pen. Code, § 448a). A prior conviction of having issued a check without sufficient funds (Pen. Code, § 476a) was charged and admitted but the judgment reflects no disposition of the allegation. Defendant was sentenced to the state prison for the term prescribed by law.

Although we reject all of the many contentions presented by defendant on appeal from the judgment, we nevertheless conclude, inter alia, that a trial judge must exercise his discretion to prevent impeachment of a witness by the introduction of evidence of a prior felony conviction when the probative value of such evidence is substantially outweighed by the risk of undue prejudice. (See Evid. Code, § 352.)

The charges stem from fires independently originating in buildings housing neighboring business establishments, Rudy's Keg, a bar, and north of the bar, Lewin's Furniture Store. Both buildings were located on Vineland Avenue in North Hollywood. Other commercial enterprises are also situated on Vineland south from Rudy's Keg. Behind such establishments are open areas and areas occupied by other structures, including a building in which defendant maintained an apartment.

On May 25, 1969, Rudolph Oravsky, owner of Rudy's Keg, ordered defendant to leave the premises when defendant became intoxicated and obnoxious while a patron in the bar. Defendant attempted to induce another patron to leave with him and when met with a refusal, defendant stated: "Well, come on and go with me anyway. I want to go into Los Angeles and hire a Mexican to firebomb this place for $25.00." This conversation was overheard by a third person.

During the early afternoon of July 1, Oravsky was present in a barbershop adjacent to Rudy's Keg and defendant approached and asked if he could have a drink at the bar. Oravsky replied: "Definitely not . . . this

is permanent." Defendant, who was obviously disappointed, responded: "Well, Okay," and left the barbershop. About 9 p.m. of that same day while Oravsky was in the bar he heard a noise which sounded to him like the explosion of a large firecracker. He went out through the parking lot to an alley in the rear and was able to see a fire on the roof of the building housing his bar. He climbed to the roof with a water hose and succeeded in extinguishing two small fires. There he discovered and removed a Pepsi-Cola bottle containing a small amount of gasoline and a wick. During the period of time Oravsky was at the rear and on the roof of the building, he noticed nothing unusual at Lewin's but he did see defendant's car parked near his apartment.

Oravsky returned to his bar and placed a telephone call to the police. Shortly thereafter he telephoned the police a second time and during this call Mr. Duffy, who had entered the bar during the interval between the two calls, noticed the lights of a car as it appeared to turn into the alley and stop. The car, similar to defendant's vehicle, proceeded slowly down the alley and then disappeared behind Lewin's. Both men went into the parking area and Oravsky then observed for the first time that a wooden door facing the alley on the Lewin's building was aflame. He also noticed that defendant's car was no longer in the area. Oravsky called the fire department as Duffy attempted without success to extinguish the flames. Oravsky smelled gasoline at the scene of the fire at Lewin's building and Duffy testified that the fire burned as if it had been ignited by the use of gasoline. The blaze caused approximately $100,000 in damages to Lewin's before it was extinguished.

A fire department arson investigator attributed the fire at Rudy's Keg to the ignition of a flammable liquid placed on the roof of the building. He could find no natural or accidental cause for the fire at Lewin's but a full and conclusive investigation was precluded by reason of the extensive damage.

About 10 p.m. on the evening of the fires Officer Jones went to defendant's apartment. He was admitted by defendant's wife who told him that her husband had left the apartment two to three hours earlier. While there Jones saw a cap from a gasoline can. Approximately five minutes after Jones arrived at the apartment, defendant returned home. His hands smelled of gasoline as did stains on his shoes and pants. Defendant told the officer that he worked at a service station and thereafter had been to a bar for a few beers. Jones arrested defendant and found a number of books of paper matches in his pockets.

After defendant had been removed to a police vehicle, an officer in defendant's presence conducted a field test for the flammability of the

liquid in the bottle recovered from the roof by Oravsky. The officer poured out a small quantity of the contents and held a match to it. The liquid ignited rapidly. At this point defendant stated: "You can't arrest me for arson because the bottle didn't break." Prior to this statement the police in defendant's presence had made no mention of the discovery of the bottle nor had they questioned defendant as to either fire.

Defendant testified that on the day of the fires he had had an "early morning" medical appointment and "had taken off work for this at 12:00 noon." Afterwards he went to the Big H, a cocktail lounge, where he consumed a few beers. He returned home about 2 p.m. and later during the afternoon he went to the barbershop to have his hair cut. About 4:30 p.m. he returned to the Big H cocktail lounge and thereafter went to a service station to work during a shift change. Around 6:30 p.m. he returned home with a can of gasoline and a ladder as he planned to do some painting. He poured some of the gasoline into a cardboard carton prior to softening his paint brushes. As the carton began to leak he emptied the gasoline contained therein into a drain and directed his wife to return the ladder and the remaining gasoline to the service station. About 8 p.m. defendant drove his car "across the street" to the Big H and there he consumed several more beers. While at the Big H he unsuccessfully attempted to telephone his home and, becoming worried, decided to return home. There were fire engines in the vicinity and Vineland was blocked off. He parked his car at a nearby market and walked to his apartment where he was placed under arrest for arson. He admitted that he had been ejected from Rudy's Keg earlier in the year and that he saw the bottle in the possession of the police officers.

Defendant's wife testified, corroborating and contradicting defendant's testimony in certain particulars. She corroborated generally the frustrated attempt at painting but gave testimony inconsistent wth defendant's as to the approximate time of his departure from the apartment.

Defendant contends that neither count is supported by sufficient evidence. ■ The evidence is virtually all circumstantial; however, the very nature of the crime of arson ordinarily dictates that the evidence will be circumstantial. (See *People* v. *Andrews* (1965) 234 Cal.App.2d 69, 75 [44 Cal.Rptr. 94].) ■ In any event, the evidence against defendant is clearly substantial. As to the fire at Rudy's Keg, there was proof of virtually every factor the courts have relied upon in affirming arson convictions where the sufficiency of the evidence has been challenged: motive, evidenced by a threat (*People* v. *Watkins* (1968) 262 Cal.App.2d 687 [68 Cal.Rptr. 871]; *People* v. *Cole* (1968) 258 Cal.App.2d 656, 659 [65 Cal.Rptr. 848]; *People* v. *Clagg* (1961) 197 Cal.App.2d 209, 212

[17 Cal.Rptr. 60]); prior presence in the building (*People* v. *Curley* (1970) 12 Cal.App.3d 732, 735-736 [90 Cal.Rptr. 783]); possession of inflammatory materials (*People* v. *Curley, supra,* 12 Cal.App.3d 732, 735-736); presence in the vicinity at time of fire (*People* v. *Alexander* (1960) 182 Cal.App.2d 281, 283-286 [6 Cal.Rptr. 153]; *People* v. *Wolfeart* (1950) 98 Cal.App.2d 653 [220 Cal.Rptr. 778]; *People* v. *Cape* (1947) 79 Cal. App.2d 284, 289 [179 Cal.Rptr. 426]); lack of evidence of natural or accidental cause but evidence of intentional (incendiary) cause (*People* v. *Clagg, supra,* 197 Cal.App.2d 209, 212; *People* v. *Cape, supra,* 79 Cal. App.2d 284, 289; *People* v. *Andrews, supra,* 234 Cal.App.2d 69, 76); more than one fire with temporal and spatial proximity (*People* v. *Cole, supra,* 258 Cal.App.2d 656, 658-659; *People* v. *Andrews, supra,* 234 Cal.App.2d 69, 76); and defendant's possession of the instrumentality utilized to start the fire (*People* v. *Curley, supra,* 12 Cal.App.3d 732, 735-736; *People* v. *Wolfeart, supra,* 98 Cal.App.2d 653).

In addition to his clearly unmeritorious challenge of the sufficiency of the evidence on the Rudy's Keg count, defendant contends that there is no evidence of motive as to the Lewin's fire. Motive, of course, is not an element of arson but the absence thereof may make proof of the essential elements less persuasive. At least two possible motives are suggested either of which the jury could reasonably have found to be present: diversion of suspicion or the hope by defendant that Rudy's Keg because of its proximity to Lewin's would become ignited in some manner from the Lewin's blaze.

Viewing all of the evidence and considering that there are possible innocent explanations for some of the circumstances, we conclude that there is substantial evidence in support of the verdicts reached by the jury. (See, e.g., *People* v. *Reilly* (1970) 3 Cal.3d 421, 424-425 [90 Cal.Rptr. 417, 475 P.2d 649].)

 Defendant also contends that he was denied due process of law because the prosecution failed to conduct a more complete investigation as to the cause of or reason for the fires. Defendant, weaving a web of conjecture, argues that the prosecution neglected to investigate the possibility that the fires were deliberately set in order to perpetrate a fraud or frauds upon insurance companies. The record does not reveal the extent of the official investigation but it does reveal that such investigation did produce overwhelming evidence of defendant's guilt. The existence of circumstances under which insurance-fraud fire or fires might be inferred is, at best, only a remote conjecture. Contrary to defendant's contentions *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851-854 [83 Cal.Rptr. 586, 464 P.2d 42], does not establish a standard of judicial review of official pretrial

investigations nor does it impose a general duty on prosecutorial officials to serve as defense investigators.

On cross-examination defendant was asked about, and admitted, a 1965 felony conviction for issuing a check without sufficient funds (Pen. Code, § 476a). The jury was instructed on the limited purpose for which the prior conviction was admitted. (CALJIC No. 54-B (rev.).) Defendant contends that since this conviction bears no necessary relationship to either the charged offenses or his veracity, impeachment by the receipt of such evidence constitutes an improper restriction on his freedom to choose whether to testify and constitutes a denial of due process. Defendant misconstrues both the law governing impeachment by prior felony convictions and the nature of his prior offense.

■ Two provisions of the Evidence Code control the admission of felony convictions for impeachment. Section 788 provides, with four exceptions not here relevant, that: "For the purpose of attacking the credibility of a witness, it *may* be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony. . . ." (Italics added.) Section 352 grants the trial judge discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice. . . ."

■ Although the application of section 788 has been before this court on numerous occasions in the past (e.g., *In re Ferguson* (1971) 5 Cal.3d 525, 534 [96 Cal.Rptr. 594, 487 P.2d 1234]; *People v. McClellan* (1969) 71 Cal.2d 793, 809 [80 Cal.Rptr. 31, 457 P.2d 871]), we have never specifically addressed ourselves to the relationship between section 788 and section 352. Decisions of the Courts of Appeal have done so and have reached the conclusion that the trial judge has no discretion to exclude evidence of a prior felony conviction when the lawfulness of that conviction is established or uncontested. (*People v. House* (1970) 12 Cal.App. 3d 756, 762-763 [90 Cal.Rptr. 831]; *People v. Grant* (1970) 11 Cal.App.3d 687, 691 [89 Cal.Rptr. 784]; *People v. Stewart* (1970) 11 Cal.App.3d 242, 248 [89 Cal.Rptr. 707]; *People v. Sneed* (1970) 8 Cal.App.3d 963, 966 [88 Cal.Rptr. 32]; *People v. Romero* (1969) 272 Cal.App.2d 39, 45-46 [77 Cal.Rptr. 175]; *People v. Kelly* (1968) 261 Cal.App.2d 708, 712-713 [68 Cal.Rptr. 337]; see *People v. Tiner* (1970) 11 Cal.App.3d 428, 438-442 [89 Cal.Rptr. 834]; *People v. Goodman* (1970) 8 Cal.App.3d 705, 707 [87 Cal.Rptr. 665]; *People v. Hall* (1970) 7 Cal.App.3d 562, 565 [86 Cal.

Rptr. 504]; *People* v. *Carter* (1970) 7 Cal.App.3d 332, 339-340 [88 Cal. Rptr. 546]; *People* v. *Savala* (1969) 2 Cal.App.3d 415, 419-420 [82 Cal. Rptr. 647]; *People* v. *Donovan* (1969) 272 Cal.App.2d 426, 434 [77 Cal. Rptr. 293]; *People* v. *Aulisi* (1968) 264 Cal.App.2d 149, 151-152 [70 Cal. Rptr. 220].) To the extent that these decisions are inconsistent with the views hereinafter expressed, they are disapproved.

 Section 788 is an exception, indeed the only exception, to the rule that "evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness." (Evid. Code, § 787.) In providing this exception the Legislature used the permissive word "may" rather than a mandatory word such as "shall." We conclude that the choice of language leaves the trial court with discretion to exclude proof of prior felony convictions offered in impeachment. Such interpretation is not unique. In construing a similar provision (14 D.C. Code, § 305), the United States Court of Appeals for the District of Columbia Circuit concluded: "[I]t is not written in mandatory terms. [Fn. omitted.] It says, in effect, that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judical discretion to play upon the circumstances as they unfold in a particular case." (*Luck* v. *United States* (1965) 348 F.2d 763, 767-768 [121 App.D.C. 151] (italics in original);[1] see also *United States* v. *Johnson* (1st Cir. 1969) 412 F.2d 753, 756; *United States* v. *Palumbo* (2d Cir. 1968) 401 F.2d 270, 273-275; *Burgess* v. *State* (1931) 161 Md. 162 [155 A. 153, 75 A.L.R. 1471]; *People* v. *Eldridge* (1969) 17 Mich.App. 306 [169 N.W.2d 497]; compare *United States* v. *Napue* (7th Cir. 1968) 401 F.2d 107, 113, with *United States* v. *Morefield* (7th Cir. 1969) 411 F.2d 1186, 1188-1189.)

In *Luck* the court alluded to the general rule that a judge may exclude evidence when its probative value is outweighed by the risk of undue prejudice. (348 F.2d 763, 768-769.) That same rule is codified in our Evidence Code in section 352. This section is one of the "general provisions" of the Evidence Code (see Evid. Code, div. 3) which apply to evidence admissible under other provisions thereof. We find

---

[1]The *Luck* decision no longer states the rule in that jurisdiction. A different result was reached in *Taylor* v. *United States* (D.C. Cir. Aug. 6, 1971) 9 Crim.L.Rep. 2450 because 14 District of Columbia Code section 305, had been amended to provide that evidence of any prior felony conviction "shall be admitted if offered" for impeachment. This subsequent development is based on statutory change and not the underlying rationale to which we still subscribe.

nothing in the statutory language to exempt section 788 from the general evidentiary provisions applicable to all rules of admissibility, and conclude that when sections 788 and 352 are read together they clearly provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice.

We do not purport to establish rigid standards to govern that which in each instance must depend upon the sound exercise of judicial discretion. We can and here indicate the more important factors that must be considered by trial courts. Judge (now Chief Justice) Burger discussed these factors at length in *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 App.D.C. 343]: "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence . . . generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not. . . . The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness. [Par.] A special and even more difficult problem arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly. . . . [Par.] . . . One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." (Fns. and citations omitted.)

This last mentioned factor, we feel, calls for a word of caution. We do not propose to encourage or countenance a form of blackmail by defend- No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible. We have previously said: "The defendant must weigh the danger of impeachment by the intro-

duction of prior convictions for every witness he calls for the defense. 'The fact that the witness may also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances.' (*Adamson* v. *California,* 332 U.S. 46, 57-58. . . .)" (*People* v. *Modesto* (1965) 62 Cal.2d 436, 454 [42 Cal.Rptr. 417, 398 P.2d 753]; accord, *People* v. *Roberts* (1966) 65 Cal.2d 514, 522 [55 Cal.Rptr. 412, 421 P.2d 420].) In *Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229], the foregoing analysis set forth in *Modesto* was not rejected and "the court appears to tacitly assume [*sic*] that the deterrent effect upon defendant's testifying where evidence of prior convictions may be adduced violates neither due process nor the right of defendant to call witnesses on his own behalf under the Sixth Amendment." (*People* v. *House, supra,* 12 Cal.App.3d 756, 764.) ▮ We conclude that although there is no constitutional bar to the use of valid prior felony convictions for impeachment purposes, there are limits on the use of such evidence contained within the statutory provisions we have discussed. ▮ A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the timeliness of its ruling on the admissibility of the prior convictions.

In the instant case defendant made no objection to the receipt of evidence of his prior conviction on the grounds now urged. Such omission is understandable in light of the appellate court decisions heretofore cited. (See *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22-28 [76 Cal.Rptr. 809, 453 P.2d 353].) ▮ Accordingly we have examined defendant's prior felony conviction and conclude on the merits that it was properly admitted. ▮ An essential element of the crime of issuing a check without sufficient funds is intent to defraud. (Pen. Code, § 476a.) ▮ The nature of the offense is not one likely to inflame passions or present a close analogy to the current charges. The conviction was comparatively recent and represents only a single offense (cf. *People* v. *Chacon* (1968) 69 Cal.2d 765, 777-778 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]). In short, the probative value of this prior felony conviction was substantially high and the risk of undue prejudice was minimized. We conclude that reasonable exercise of judicial discretion by the trial court could not have justified the exclusion of such evidence.[2]

---

[2]In determining whether a decision has retroactive effect, we are guided by three considerations: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]. See also *Desist* v. *United States* (1969) 394 U.S. 244, 249-250 [22 L.Ed.2d 248, 255-256, 89 S.Ct. 1030] (plurality opinion); *Johnson* v. *New*

Defendant further contends that he was prejudiced by the failure of the court to instruct *sua sponte* that the corpus delicti must be proved independent of his admissions (CALJIC No. 29C), that evidence of an oral admission should be viewed with caution (CALJIC No. 29D), and that the jury must decide each count separately on the evidence and law applicable thereto uninfluenced by their verdict on any other count (CALJIC No. 112 (Rev.)). He also complains of the failure of his counsel to request instructions on alibi (CALJIC No. 31) and evidence of other offenses (CALJIC No. 33).[3]

■ The trial court erred in failing to instruct *sua sponte* that the corpus delicti must be proved independently of admissions (*People* v. *Holbrook* (1955) 45 Cal.2d 228, 234 [228 P.2d 1]) and that evidence of oral admissions must be viewed with caution (*People* v. *Ford* (1964) 60 Cal. 2d 772, 799 [36 Cal.Rptr. 620, 388 P.2d 892]).[4] These instructions would have been applicable to two statements: the pre-fire statement to the patron of the bar that he wanted to hire someone to firebomb Rudy's Keg[5] and the post-fire exclamation to the police that he could not be arrested for arson because the bottle did not break. The omission, however, does not constitute reversible error if upon a reweighing of the evidence it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Wheelwright* (1968)

---

*Jersey* (1966) 384 U.S. 719, 727 [16 L.Ed.2d 882, 888, 86 S.Ct. 1772]; *In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1107-1108 [80 Cal.Rptr. 633, 458 P.2d 713].) The risk of prejudice we seek to avoid in this decision is not of constitutional dimensions. Both prosecutorial officials and courts have relied upon the decision we have disapproved, and reopening all cases in which felony convictions have been used for impeachment would have a deleterious effect on the administration of justice. The standards herein enunciated will be applied only to trials begun after the date of this decision.

[3]Citations are to CALJIC as revised in 1958. Equivalents in CALJIC (3d ed. 1970) are, in order: Nos. 2.72, 2.71, 17.02, 4.50, and 2.50.

[4]Although Code of Civil Procedure section 2061, requiring the cautionary instruction, was repealed effective January 1, 1967, the repeal does not affect the decisional law. (*People* v. *Blankenship* (1970) 7 Cal.App.3d 305, 310 [86 Cal.Rptr. 651]; *People* v. *Reed* (1969) 270 Cal.App.2d 37, 43 [75 Cal.Rptr. 430]; 7 Cal. Law Rev. Comm. Rep. (1965) p. 358.)

[5]For purposes of requiring independent evidence of the corpus delicti and cautionary instructions, we have not distinguished between actual admissions (Evid. Code, § 1220) and pre-offense statements of intent (Evid. Code, § 1250). (*People* v. *Ford, supra,* 60 Cal.2d 772, 780-784; see *People* v. *Blankenship, supra,* 7 Cal.App.3d 305; *People* v. *Bispham* (1938) 26 Cal.App.2d 216 [79 P.2d 166].) The federal rule is to the contrary. (*Warszower* v. *United States* (1941) 312 U.S. 342, 347 [85 L.Ed. 876, 880, 61 S.Ct. 603].) Although we agree that the risk of conviction on a false pre-offense statement alone is less than the risk of such a conviction upon a false confession or admission, we find the risk of an unjust result sufficient to justify our broader rule.

262 Cal.App.2d 63, 71 [68 Cal.Rptr. 356].) In the instant case the corpus delicti is convincingly established independently of admissions and the error of the omission of that instruction cannot be deemed as reversible. (See *People* v. *Howk* (1961) 56 Cal.2d 687, 706-707 [16 Cal.Rptr. 370, 365 P.2d 426]; *People* v. *Holbrook, supra,* 45 Cal.2d 228, 234.)

The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made. (*People* v. *Bemis* (1949) 33 Cal.2d 395, 400 [202 P.2d 82].) We find no reasonable probability that the jury would find that the statements either were not made or were not reported accurately. The pre-offense statement was heard by two witnesses, at least, one of whom appears to have been a friend of the defendant. The comment concerning the failure of the bottle to break was related by a law enforcement officer. There was no conflicting evidence or issue concerning the statements. (Cf. *People* v. *Bemis, supra,* 33 Cal.2d 395.) We conclude that it is not reasonably probable that had the jury been given the cautionary instruction they would have reached a result more favorable to defendant.

An instruction that the jury must decide each count separately on the evidence and law applicable thereto, uninfluenced by their verdict on any other count, need not be given in the absence of a request therefor. (*People* v. *Holbrook, supra,* 45 Cal.2d 228, 233.) Even had the instruction been requested and given, it would not have instructed the jury "to disregard its finding on the facts as regards any count in determining any other count in which those facts are relevant." (*People* v. *Bias* (1959) 170 Cal.App.2d 502, 510 [339 P.2d 204].) Here all evidence was relevant to both counts.

Although the remaining two instructions (alibi and evidence of other offenses) are conceded to have been omitted properly in the absence of a request, as an aid in our subsequent evaluation of the claim of inadequacy of representation, we will here mention the effect of their omission. The albi instruction is fundamentally a restatement of the standard reasonable doubt instruction (CALJIC No. 21) which was given. The instruction on evidence of other offenses would have been inappropriate as there was no evidence of offenses other than those charged.

As previously indicated, trial counsel should have requested certain jury instructions. We have concluded, however, that omission of the instructions was not prejudicial and it cannot be said that the trial was reduced to a sham or a farce or that a crucial defense was withdrawn. (*People* v. *Hill* (1969) 70 Cal.2d 678, 689 [76 Cal.Rptr. 225, 452 P.2d 329]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863,

386 P.2d 487]; *People* v. *Mattson* (1959) 51 Cal.2d 777, 790-791 [336 P.2d 937].)

Defendant contends that his representation by counsel at trial was inadequate. In addition to the claim based upon failure to request certain instructions, he points to several principal areas: failure to make a motion under Penal Code section 995 directed against the Lewin's count, insufficiency of trial presentation including nature and extent of examination and cross-examination of witnesses, and failure to conduct an adequate investigation into possible defenses.

In support of these contentions, counsel on appeal has submitted an affidavit[6] setting forth summaries of certain conversations with trial counsel. He alleges that trial counsel has admitted his own inadequacy. ■ . Self-proclaimed inadequacies on the part of trial counsel in aid of a client on appeal are not persuasive. ■ Here, of course, the affidavit is not that of trial counsel but the statement of counsel on appeal containing his version of what trial counsel told him. We are not bound to accept such evaluations of competency. (*People* v. *Saidi-Tabatabai* (1970) 7 Cal.App. 3d 981, 988-989 [86 Cal.Rptr. 866]; *People* v. *Cuevas* (1967) 250 Cal. App.2d 901, 907-908 [59 Cal.Rptr. 6].) To hold otherwise would render complaints of inadequate representation "a 'boudoir defense,' unchallengeable by the prosecution. . . ." (*People* v. *Cuevas, supra,* 250 Cal. App.2d 901, 907.) We will, however, reach the issues raised by counsel's affidavit as it, when read in conjunction with the entire record on appeal, does not establish a deficiency under *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464-466.

Although at the conclusion of the preliminary examination defendant was not held to answer on the Lewin's count, the information subsequently filed charged both the Rudy's Keg and the Lewin's counts. Defendant contends that the failure of his counsel to make a motion under Penal Code section 995 to dismiss the Lewin's count demonstrates inadequate representation.

■ At the completion of the preliminary hearing the magistrate ordered the Lewin's charge dismissed because the evidence was "too weak." His comments indicate he was principally concerned with the failure of the prosecution to make a sufficient showing of motive. Motive, as noted above, is not an element of arson. If the magistrate had found *as a matter of fact* that defendant had not started the Lewin's fire, the district attorney

---

[6]The affidavit was used in support of the motions for mistrial and to vacate the proceedings and the second motion for new trial. After considering this affidavit the trial judge commented ". . . I cannot agree that . . . [trial counsel] improperly represented his client."

might well have been bound by his determination. (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241].) The district attorney, however, need not accept the magistrate's legal conclusions. (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521]; see *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 664-665.) Having resolved that the magistrate's decision was in error *as a matter of law,* the district attorney might have filed a new complaint or, as he in fact did, file an information which included the dismissed count and await the response of the defense. If, in the latter case, a motion to dismiss (Pen. Code, § 995) was made and was granted, the district attorney could then have filed a new complaint. Reviewing the transcript of the preliminary hearing which contains substantially the same evidence produced by the prosecution at trial, we conclude that the magistrate's ruling as to the Lewin's count was patently erroneous as a matter of law and the district attorney was warranted in adding the dismissed count to the information subsequently filed. (See also Pen. Code, § 739.)

According to counsel's affidavit, defendant was opposed to a continuance to allow his trial counsel to seek additional witnesses. Under such circumstances it is indeed difficult for us to accept the suggestion that defendant would have desired the meaningless delay necessitated by the making of a futile motion under Penal Code section 995. Counsel cannot be faulted for declining to engage in a purely dilatory tactic. (See *People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Euell* (1968) 260 Cal.App.2d. 441, 444-445 [67 Cal. Rptr. 148].)

 Defendant further contends that trial counsel failed to call certain witnesses, make some unspecified objections to evidence and to ask certain questions on direct and cross-examination. These are matters of trial tactics as to which we will not ordinarily exercise judicial hindsight. (See *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 709-710 [83 Cal. Rptr. 608, 464 P.2d 64]; *People* v. *Hill, supra,* 70 Cal.2d 678, 690-691.) Defendant, however, insists that the alleged omissions were not the result of tactics and judgment but the result of a failure adequately to investigate the facts or formulate a defense.

The alleged deficiencies of investigation are in two principal areas: first, the failure to locate such witnesses as defendant's two drinking companions and, second, a failure to inquire into possible defenses stemming from epilepsy. In neither case does the record reveal a deficiency and, even conceding the accuracy of the affidavit, we are of the opinion that such was not established.

The principal thrust of the allegation of failure to investigate is that witnesses who would be able to corroborate the defense of alibi were not located. The two witnesses who were not located were two alleged drinking companions whom defendant described in bizarre terms as "characters" and whom he "Wouldn't pick . . . for friends." In his testimony at trial defendant revealed that his counsel had ascertained the name of one such witness. The affidavit indicates that, at the minimum, a defense investigator was sent to interview the bartender at the Big H with negligible results and that counsel desired additional investigation but defendant was unwilling to have him seek a continuance. ▮▮▮ Since the available record indicates there was some investigation and defendant was opposed to delay to allow additional investigation, we cannot consider counsel's investigation to have been inadequate. (See *People* v. *Hill, supra,* 70 Cal. 2d 678, 690-691.)

In proceedings pursuant to Penal Code section 1368, two psychiatrists examined defendant. Both found him sane but alluded to a history of seizure disorders, one mentioning epilepsy as a possibility. Defendant now suggests that failure of his counsel to investigate possible defenses based upon epilepsy demonstrates inadequate representation. (See *In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921]; cf. *In re Downs* (1970) 3 Cal.3d 694 [91 Cal.Rptr. 612, 478 P.2d 44].) In *Downs* we concluded that counsel had investigated and had made a sound tactical decision not to present evidence of epilepsy. In *Saunders* we found the investigation to have been inadequate. In both of those cases the defendants had encouraged the investigation and presentation of defenses based upon their epileptic conditions. In *Saunders,* although counsel had been apprised of defendant's history of serious mental impairment, he went to trial having made no effort either to obtain past medical reports or to have defendant's current medical condition evaluated. In the instant case defendant does not appear to have suggested at any time that either his conduct on the night in question or his present ability to recall that night had been affected by his medical condition. Counsel did have psychiatric reports that gave no indication that defendant's possible epileptic condition could have contributed to his conduct or his recollection of the events during the night of the fires. According to the affidavit, trial counsel entertained doubts as to defendant's mental condition notwithstanding the reports. The affidavit fails, however, to mention defendant's letter, contained in the court file, to the trial judge in which he expressed violent opposition to further psychiatric evaluation. Additionally defendant maintained throughout a consistent and clear account of the happenings of the evening in question. This, of course, is inconsistent with the proffered theory of lapse of memory. Unlike the situation in *Saunders,* pursuit of a defense

based on temporarily diminished capacity because of epilepsy would have been inconsistent with the principal defense of alibi. (Cf. *People* v. *Glover* (1967) 257 Cal.App.2d 502, 507-509 [65 Cal.Rptr. 219].)

 In the instant case trial counsel had psychiatric evidence indicating defendant's epileptic history had no bearing on the case, and a defendant who was hostile to additional psychiatric evaluation and whose version of the events negated any possible defense based upon epilepsy. Under these circumstances it was not incumbent upon trial counsel to investigate further a defense based upon medical condition. Since neither the psychiatric report obtained by present counsel nor the psychologist's evaluation prepared at the Southern Reception Guidance Center support in any way the theories now urged, it is apparent that additional investigation if undertaken would have been fruitless. We cannot conclude that trial counsel's investigation or representation was inadequate. Trial proceedings were not a sham (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 469) nor was any crucial defense withdrawn (*In re Beaty* (1966) 64 Cal.2d 760, 764-765 [51 Cal. Rptr. 521, 414 P.2d 817]; *People* v. *Mattson, supra,* 51 Cal.2d 777, 790-791). Other contentions made by defendant are likewise without merit.

 The People ask that the cause be remanded to determine if omission in the judgment of a finding on the admitted prior felony conviction was a clerical error. Absent a clear showing in the record that the omission was a clerical error, such an omission will be construed as an act of judicial leniency. (*In re Candelario* (1970) 3 Cal.3d 702, 706-707 [91 Cal.Rptr. 497, 477 P.2d 729].) Nothing in the instant record indicates a clerical error.

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied February 3, 1972.