[Crim. No. 988.   Fourth Dist.   Aug. 12, 1955.]

THE PEOPLE, Respondent, v. JEWELL EDNA
FREEMAN, Appellant.

Shaw & Barnett for Appellant.

Edmund G. Brown, Attorney General, and Joan D. Gross,
Deputy Attorney General, for Respondent.

SHELL, J. pro tem.*—Appellant was convicted by a jury
on a charge of arson (violation of Pen. Code, § 447a).   Her
motion for a new trial was denied and she was granted proba-
tion.   She appeals from the "judgment" (an order granting
probation is deemed to be a final judgment.   Pen. Code, § 1237,
subd. 1, as amended in 1951) and from the order denying her
motion for a new trial.

In her opening brief the appellant concedes that "There
was no room for doubt that the fire was of incendiary origin."

*Assigned by Chairman of Judicial Council.

Appellant urges, however, that the evidence was insufficient to justify the implied finding of the jury that appellant set the fires or participated therein. No other ground for reversal is presented on this appeal.

It is our function to discover whether there is substantial evidence in the record to support the verdict of the jury, and the denial by the trial judge of the motion for new trial. We must assume in favor of the verdict and of the order denying the motion for new trial the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict and the order denying the motion for a new trial. (*People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467] ; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Wissenfeld,* 36 Cal.2d 758, 765 [227 P.2d 833].)

From the record in this appeal we believe that the jury, from the evidence presented to them, could reasonably have deduced the facts which we recite.

The fire which damaged the house in which appellant was living, located in Norco, Riverside County, and in which she and her husband had an equity, was the result of five different fires started by the agency of some person on the late afternoon or evening of June 22, 1954. There were two structures on the premises, the principal dwelling having three bedrooms, living room, kitchen and bathroom, being on the front of the lot, and a structure containing one bedroom and a washroom on the rear of the lot. All of the five incendiary fires were set by the use of a petroleum product in the bedrooms and the living room of the front house, none being set in the structure in the rear.

The defendant was the last person shown by direct evidence to have been inside the front house before the fire. While there is a conflict in the evidence as to the time she left that house, there is ample evidence to support a finding that she left the front house between 6 p. m. and 6 :30 p. m. The fire in the living room had thoroughly enveloped the living room by 10 o'clock p. m., when it was noticed by neighbors. One neighbor attempted to control it by the use of a garden hose, being unable to approach it closely because of the heat. The first fire officer, Frederick R. Cane of the State Forestry Service, reached the scene of the fire at about 10 :10 p. m. He found that the fire involved the whole living room and that the ceiling had burned through. There was substantial evident that a gallon jug and a 5-gallon can containing small

amounts of kerosene or some other petroleum product were found in the kitchen. No fire was started in the kitchen. The odor of a petroleum product was noticed throughout the house and tests showed the presence of a petroleum product on some of the charred fabrics, including a bedspread, which was partially burned. This spread was on one of the two beds in a back bedroom.

Samuel R. Waugh, an expert witness, for 25 years an investigator for the arson department of the National Board of Fire Underwriters, examined the premises on the morning following the fire and as a result of such examination testified that in his opinion the fire may have burned as long as three hours after being started.

The jury by its verdict made an implied finding that the appellant either personally set the fires herself, or induced Norman Hudson, a friend of the appellant, who had on at least one occasion stayed at appellant's home, to set the fires. Hudson had been seen on the afternoon of the fire at a service station at the same time appellant was there, and was observed by a defense witness, Edith Barklow, at the appellant's premises after appellant had driven away.

Other than the usual furniture, much of which was burned or damaged by the several fires, but few of appellant's clothing or personal effects were found in the front house. The chests of drawers and dresser drawers contained practically none of appellant's underclothing. Some old dresses were in the closets and an old pair of shoes were found in one bedroom. Most of the beds had no sheets on them. Only one towel was found in the house, but no other linens.

In the bedroom of the rear house, in which no fire was started, there were found a great many party dresses, the bed being half covered with them, others being found in the closet. About 20 pairs of ladies' shoes were found in the closet. A cedar chest containing lace tablecloths, a case of silverware and a number of pictures was also found in that bedroom. Most of the family pictures were in this bedroom. There was evidence to the effect that much of appellant's clothing had been moved by appellant's grown daughter into the back bedroom in March, about three months before the fire, at about the same time appellant obtained new insurance coverage.

A neighbor lady, who had never been an intimate friend of the appellant, had been told by appellant shortly before appellant left the vicinity that she was driving to Long Beach;

and the evidence is uncontradicted that appellant had never before informed this witness of an intended departure.

Upon receiving a telephone call at the home of Mrs. Opal Sommes, at Long Beach, on the night of the fire from her friend and neighbor, a Mrs. Edith Barklow, that there had been a fire at appellant's home, the friend, Mrs. Opal Sommes, heard appellant exclaim: "My God, no. What about my new chair. It isn't paid for. Maybe the T-V blew up." On the other hand, Betty, a grown daughter of appellant, testified that after that call her mother told her the house had burned; that Edith Barklow thought maybe the "T-V" burned up.

The foregoing illustrates one of the instances appearing in the record of variances in the testimony of the appellant and of her witnesses which justified the jury in treating such testimony with distrust.

The appellant stated to the first officer who asked her about her insurance on the morning after the fire that she had no insurance. The record shows that appellant later on the same morning stated to Mr. Waugh that she had about $5,000 insurance on the house and $2,000 or $2,500 on the personal property. However, the appellant's property had been insured until the early spring of 1954 by the State Farm Insurance Company by a policy of $4,000 on the front house, $10,000 on the contents thereof, and $1,500 on the rear house. The agent for that company notified appellant that the policy was being canceled for failure to pay the premium, and on March 16, 1954, appellant called by long distance from Norco in Riverside County to Stanley Asher, an insurance agent in Palm City, south of San Diego, told him her policy was running out and asked for coverage of $5,000 on the front house, $10,000 on its contents and $2,000 on the rear house. This coverage was made by Mr. Asher as of March 16, 1954. An appraiser of 17 years' experience testified that the value of the furnishings in the front house before the fire was about $3,100.

The appellant was heavily in debt. About $3,900 remained to be paid on the mortgage on her home and she had borrowed an additional $1,900. Appellant admitted having numerous debts, among which was about $14,000 owing to the State Board of Equalization. By reason of her failure to pay a balance of $465.93 to the Pacific Telephone and Telegraph Company, that company had discontinued service to her, and had filed an action against her. These bills were the result of appellant's operation of a lumber brokerage business. She was also in-

debted to Walt's Service Station in an amount from $100 to $600.

There is substantial evidence that prior to the fire there had recently been living on the premises the appellant and her husband; an adult daughter, Betty Hornbach; an adult son, Robert Freeman, with his wife and two children; a minor son, Eddie; and a friend of the Freemans, Clifford Jackson and his wife and child. Appellant's husband had been in Texas for several days before the fire. Robert Freeman and his family had moved out about a week before the fire, and Clifford Jackson and his family had moved out a day or two before the fire, leaving residing there at the time of the fire only the appellant, her minor son and her adult daughter, all of whom left in the very late afternoon to go to Long Beach.

The circumstances relied upon by the People to sustain the verdict of the jury are the conceded incendiary character of the fires, the opportunity appellant had to set them, the removal of most of her clothing and personal effects from the front house to the rear house, evasiveness of appellant concerning insurance coverage, the overinsurance of the house and contents, the heavy indebtedness of the appellant, and the removal from the premises shortly before the fire of all occupants other than appellant and her minor son and adult daughter, all of whom left the premises on the evening of the fire, the appellant being the last to leave the house in which the fires occurred.

The offense of arson is frequently one which is committed in stealth. In many cases in which the charge is arson, the People must rely upon circumstantial evidence to establish the guilt of the accused. In the instant case the evidence pointing to the guilt of the appellant is circumstantial. The jury was accurately instructed by the court as to the value and effect of circumstantial evidence. We are of the opinion that the facts hereinbefore recited, which were impliedly found by the jury to be true, reasonably justify the verdict of the jury finding the appellant guilty, and further reasonably justify the order of the trial judge denying appellant's motion for a new trial.

Appellant suggests, but apparently does not seriously contend, that the trial court should have instructed the jury upon the subject of alibi. No such instruction was requested by appellant at the time of trial and such instruction need not be given in the absence of a request therefor by the accused.

(*People* v. *Keilly*, 54 Cal.App.2d 764, 767 [129 P.2d 939], and cases cited therein.)

It follows therefore that the judgment and order denying a new trial must be and the same hereby are affirmed.

Barnard, P. J., and Mussell, J., concurred.