[Crim. No. 2.    Fifth Dist.    Nov. 21, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. LESTER
DEAN CLAGG, Defendant and Appellant.

Lester Dean Clagg, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Matthew M. Kearney, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant was convicted of arson (Pen. Code, § 447a), the indictment charging that defendant did ". . . on or about the 25th day of December, A. D. 1960 . . . willfully, unlawfully, feloniously and maliciously set fire to and burn the dwelling house building at number 349 South Magnolia Street, in the City of Woodlake."

The defendant raises two points on appeal, claiming (1) that the evidence did not justify the conviction, and (2) that the trial court committed error in receiving the testimony of his "wife," Wilma Gertrude Clagg, who had entered into a marriage ceremony with him which the trial court held to be absolutely void, by reason of the fact that her final decree of divorce from a previous husband had not then been entered.

Early on Christmas morning in 1960 a fire broke out in the dwelling house occupied at that time solely by the defendant. Mrs. Clagg was not living at the home for the reason that there had been extensive difficulties between them which had resulted in their separation two weeks previously. On several occasions appellant had threatened that if a separation took place she would not get anything out of the house and that he would burn everything in it. He also had told her that if she did not destroy a power of attorney which he had given her he would break up and burn everything in the house. The defendant had spent a large part of the previous day drinking in local taverns, and he had told the witness James F. Jackson

that Wilma Clagg had sworn out a warrant for the arrest of his mother and that ". . . he was going to fix her or have her arrested or something to that effect."

Appellant arrived at the house at about 11:30 p.m. on the night preceding the fire and remained there until the fire broke out, when he got into his truck, and instead of telephoning the fire department from a neighbor's home or going directly to the fire station, which was only two blocks north of his house, he drove a considerable distance to report the occurrence to a police officer. At the scene he told Officer Mayfield that he had lost everything in the fire, including a television set and sewing machine, although he had previously delivered the sewing machine to one James F. McFarland as collateral on a $100 loan. Most of the furniture in the house had been purchased by Wilma Clagg before the marriage, or had been obtained as a result of trading furniture which had belonged to her. The defendant testified that he had given her a power of attorney "to everything we own" and that she was thereby authorized "to take everything we own except the clothes on my back or anything she wanted if I violated my marriage vows."

There were two independent fires, one in the kitchen which burned through the floor, and one in the living room which appeared to have three separate "hot spots." Expert testimony established that the hole in the kitchen floor would require a flame of 1400° temperature burning on top of it for 45 minutes. The three "hot spots" in the living room were estimated to be of approximately the same degree of heat, which indicated that they were all burning at about the same time. The overstuffed furniture in the living room flamed up in a fashion that was not normal according to Fire Commissioner Ensign; the expert witness Bates testified that in his opinion the fire in the furniture was not caused by a cigarette, as suggested by appellant, but that its nature indicated that flammable liquids had been used. The appellant urged that the fire in the kitchen was the result of the alleged malfunctioning of an electric switch or that it was caused by an electric iron. But the expert witness Holmes found no evidence of electrical shorting in the receptacle or wall switch; electrician Summers testified that there were no signs of overheating or shorting in the house wiring, and Wilma Clagg stated that there was never any previous indication of defect in the switch in question. The only portion of the ironing board which was not charred was where the iron

had rested. Expert witness Holmes gave it as his opinion that the sooty residue on the plaster board in the bedroom indicated the presence of an excessive amount of petroleum based product. There was also testimony that on the day following the fire an empty ''gas'' can was found on the rear porch of the home and that Wilma Clagg had never seen it there before.

The record, both as to proof of corpus delicti and the connection of the defendant with the crime, was ample and complete. **[■]** Proof of arson requires the showing of a wilful and malicious burning (Pen. Code, § 447a). All that is needed to establish the corpus delicti, in addition to the actual burning, is that the fire was intentional or of incendiary origin. ■ This ''. . . is generally established by circumstantial evidence such as the finding of separate and distinct fires on the premises.'' (*People* v. *Sherman,* 97 Cal.App.2d 245, 249 [217 P.2d 715] ; *People* v. *Hays,* 101 Cal.App.2d 305, 311 [225 P.2d 600].) ■ The proof above referred to showed that there were two independent fires in the building; that they were not caused by any defect in the wiring of the house, the inadvertent operation of an electric iron or by a carelessly dropped cigarette. The evidence further showed the presence of an unusual amount of gasoline or other hydrocarbon substance which must have been placed there by someone. There can be no legitimate doubt that a crime was committed.

■ The circumstantial evidence that the defendant was the arsonist is equally strong. He had threatened to burn the house on numerous occasions in order to penalize Wilma Gertrude Clagg by destroying her furniture. The theories which he advanced for the causation of the fire were proved to be incorrect. His presence in the house, his unusual method of reporting the fire to a distant police officer rather than to the fire department located near the home, his false statements to the authorities, his fanciful and incorrect suggestions as to the origin of the fire and the discovery of the gasoline can on the back porch were all items which the jury had a right to consider in weighing the question of his guilt or innocence. It cannot be gainsaid that there was substantial evidence to prove the guilt of the defendant. (*People* v. *Freeman,* 135 Cal.App.2d 11, 12-15 [286 P.2d 565] ; *People* v. *Patello,* 125 Cal.App. 480, 483-485 [13 P.2d 1068].)

■ The testimony of Wilma Gertrude Clagg was properly admitted by the trial court. Section 1322 of the Penal Code and section 1881 of the Code of Civil Procedure provide that

a wife cannot be examined as a witness in a criminal action against the husband without the consent of both, except for a crime committed by one against the person or property of the other, and with certain other exceptions not here applicable.

The appellant and Wilma Gertrude Clagg went through a marriage ceremony on June 14, 1957. It was stipulated that the marriage occurred subsequent to February 5, 1954, and before July 5, 1960. The record further shows that on February 5, 1954, an interlocutory decree of divorce was entered in an action between Wilma Clagg and her previous husband, but that the final decree was not granted until July 5, 1960. The trial court held that the marriage between the defendant and Wilma Clagg was void and that as she was therefore not the wife of the defendant, she was entitled to testify. This ruling is supported by clear authority. (Civ. Code, § 61; *People* v. *Glab*, 13 Cal.App.2d 528, 533-534 [57 P.2d 588]; *People* v. *Thornton*, 106 Cal.App.2d 514, 517 [235 P.2d 227]; *People* v. *Dake*, 185 Cal.App.2d 525, 526 [8 Cal.Rptr. 283].)

To make "assurance doubly sure" the trial court called attention to the fact that the furniture in the house was, in part at least, the property of Wilma Clagg and that even if her marriage to the defendant had been legal, she was entitled to testify under the exception contained in the code sections (Pen. Code, § 1322; Code Civ. Proc., § 1881). The case of *People* v. *Schlette*, 139 Cal.App.2d 165 [293 P.2d 79] holds that this exception covers community property as well as the separate property of the wife.

We find no error in the record.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.