Filed 6/1/16  P. v. Coles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIA MARIE COLES,<br><br>    Defendant and Appellant. | C077669<br><br>(Super. Ct. No. MCYKCRF140510) |

Defendant Mia Marie Coles appeals her conviction for arson.  She contends she received ineffective assistance of counsel when her trial attorney failed to argue in his motion for acquittal that the prosecution had not established the corpus delicti for arson.  She also contends the trial court's imposition of multiple registration fees under Penal Code section 987.5 was unauthorized or alternatively, that counsel was ineffective for failing to object to the assessment of these fees.  (Unless otherwise set forth, statutory references that follow are to the Penal Code.)  We find counsel was not ineffective in either regard and affirm the judgment.

FACTS AND PROCEEDINGS

Defendant was having difficulty with her roommate and asked some strangers at a gas station to give her a ride to a lake.  On the way, she became anxious and afraid, and

1

asked to get out of the car. She started walking back to town on Highway A12. She wanted to smoke a cigarette, so she stepped down an embankment where she could more easily light a match. She lit multiple matches to search her purse for cigarettes, and she dropped the matches to the ground. Eventually she realized she did not have any cigarettes, walked back to the highway, and started walking westward toward Grenada.

Janet Dingle saw a person walking away from the area on the highway in the opposite lane. She drove a bit further and saw flames come up from the gully by the road. She pulled over and called 911. About the same time, Randall Gibbons also saw the fire at the bottom of the embankment. He believed it had just started based on the height of the flames. Gibbons also saw a woman walking casually toward Grenada on the north side of the highway. At one point, the woman turned around, looked at the fire and turned back around. She did not act with any urgency or try to contact Gibbons.

California Department of Forestry and Fire Protection (CAL FIRE) Battalion Chief Monty Messenger responded to the site of the fire. He saw defendant walking on the side of the highway about a quarter mile away from the fire. He asked her if she knew anything about the fire and she answered, "Yes, I started the fire because I needed help." Messenger asked how she started the fire, and she answered that she used a book of matches. Messenger handcuffed defendant, put her in the back of his vehicle, drove closer to the fire, and reported his observations to dispatch. Emergency response personnel arrived at the scene within minutes.

CAL FIRE Fire Captain Specialist Monte Whipple investigated the origin and cause of the fire. Whipple determined the origin of the fire was in an eight-foot by eight-foot area down the embankment to the side of Highway A12 approximately 12 feet from the asphalt shoulder. The only set of tracks in the area were what appeared to be new tracks of a person walking on the shoulder of the road on the same side as the fire. The tracks turned from the shoulder of the road at a 45-degree angle down the embankment bank to the point of origin of the fire and then went directly up the bank back to the road

2

at a 90-degree angle. Whipple determined that the fire originated in the area where the footprints turned and angled straight back up onto the road. The footprints and point of origin were in one of the drier areas of tules debris build up, and the tules appeared dead and dry. Whipple also found a one-by-one-inch piece of cardboard one or two feet from where the footprints turned back up the embankment, but could not determine whether it caused the fire.

In the conditions on the day of the fire, including the temperature and humidity, a discarded cigarette would not have had enough heat to ignite the fire. Whipple also eliminated campfires, power lines, railroads, burning debris, lightning, kids playing with fire, fireworks, equipment use, and vehicles as possible sources of the fire. Based on his investigation, Whipple concluded that the fire was human-caused, although investigators did not locate an item definitively determined to be the source of the fire. Whipple explained that the fire was caused directly by an open flame, like a lighter or a lit object that had been dropped or placed in the grass. He agreed that the fire was consistent with a person dropping a burning matchbook into the tules or holding it up next to a tule. He concluded that there was no reasonable explanation for the fire besides somebody directly lighting the vegetation or dropping an open flame into the vegetation.

After completing his investigation, "based on what [he] heard [defendant] say, what [he] observed as far as burn indicators and fire behavior, and what we found in the general area of origin, was that this fire was a human-caused fire that originated at the bottom of the--those footprints. And it was with either an open flame--and I don't know if it was with a lighter or if it was a lit object that was dropped or placed in the grass, but an open-flame device." He later explained he believed "someone, in this case the defendant, based on statements, either lit the vegetation or dropped an open-flame device." And, he clarified, there was no other reasonable explanation for how the fire started than that a person either directly light the vegetation on fire or dropped an open flame into the vegetation.

Before being extinguished, the fire burned approximately 1.7 acres of wetlands. After *Mirandizing* defendant, Messenger questioned her further. She admitted she started the fire with "one match book. Five fucking matches on one side and three on the other" and that she did not "know why it caught like that." She later explained she had tried to light the five matches, but they would not light, so she tried to light the four matches, and they did. She then let the matchbook go because she did not have a cigarette.

An information charged defendant with one count of arson of forest land. (§ 451, subd. (c).)

After the close of the prosecution's case, defendant made a section 1118 motion for acquittal. Defendant challenged the sufficiency of the evidence arguing the evidence failed to establish that the setting of the fire was a malicious act and that the fire in this case took place on forest land. The trial court denied the motion.

Following a bench trial, the trial court found defendant guilty. On September 2, 2014, the trial court granted defendant three years' probation. By the time of sentencing defendant had lost her social security benefits as a result of her lengthy incarceration. Accordingly, the trial court found she lacked the ability to reimburse the probation department for the costs of preparing the presentence report, to pay probation supervision fees, to pay a booking fee, or to reimburse the costs of her appointed counsel.

DISCUSSION

I

*Corpus Delicti*

Defendant contends she received ineffective assistance of counsel because counsel failed to argue the prosecution had not established the corpus delicti of arson in the motion for acquittal. Specifically, defendant argues "apart from the testimony and evidence with regard to [defendant's] extrajudicial statements prior to and immediately following her arrest, or the opinion of Fire Captain Specialist Whipple which was at least

4

in part derivative of those extrajudicial statements, the prosecution did not present even slight evidence in its case in chief either that the fire was incendiary in origin or that the fire was the result of actions by [defendant] with an awareness of, and conscious disregard, for a substantial and unjustifiable risk that her actions would set fire to forest land, or property."

To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate his trial counsel's representation fell below an objective standard of reasonableness and the defect prejudiced defendant in that there is a reasonable probability that, but for the deficiency, defendant would have obtained a more favorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674]; *People v. Williams* (1997) 16 Cal.4th 153, 215.) We need not address both prongs if the defendant makes an insufficient showing as to one. (*Strickland, supra*, 466 U.S. at p. 697.) Here, defendant has not established deficient performance.

" ' " 'The corpus delicti of a crime consists of two elements[:] the fact of the injury or loss or harm, and the existence of a criminal agency as its cause.' " ' [Citation.] 'In any criminal prosecution, the corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant.' [Citations.] Such independent proof may consist of circumstantial evidence [citations] and need not establish the crime beyond a reasonable doubt. [Citations.]" (*People v. Jones* (1998) 17 Cal.4th 279, 301.) "The amount of independent proof of a crime required for this purpose is quite small[ and has been] described . . . as 'slight' [citation] or 'minimal' [citation]." (*Ibid.*) The rule " 'reflects the . . . fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically.' (*Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 397.)" (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1200.) To adequately prove the corpus delicti of a crime " 'the prosecution need not eliminate all inferences tending to show a

5

noncriminal cause of [the harm]. Rather, the foundation may be laid by the introduction of evidence which creates a reasonable inference that the [harm] could have been caused by a criminal agency [citation], even in the presence of an equally plausible noncriminal explanation of the event.' [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 405.)

Expert opinion testimony may establish the corpus delicti when it satisfies the Evidence Code requirements that it be " '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact' [Citation]" and is "based on 'matter . . . perceived by or personally known to the witness . . . that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert's] testimony relates . . . .' [Citation.]" (*People v. Powers-Monachello* (2010) 189 Cal.App.4th 400, 412-413.) The expert cannot directly opine as to the defendant's guilt but may testify as to the cause of a crime, such as murder or arson. (*Ibid.*)

As to arson specifically, the prosecution need not establish "the whole gamut of speculative possibility as to the cause of the fire[]" and then eliminate each of those causes. "The corpus delicti will be proven sufficiently if the evidence shows . . . the fires were of incendiary origin." (*People v. Andrews* (1965) 234 Cal.App.2d 69, 76; see also *People v. Atkins* (2001) 25 Cal.4th 76, 88.) In this context, incendiary origin means the fire was deliberate and intentional, not accidental or unintentional. (*Andrews, supra*, 234 Cal.App.2d at p. 75.) The corpus delicti for arson may be established where accidental causes are ruled out, that is where there is evidence permitting an inference of a deliberately and intentionally set fire. (*Andrews,* at pp. 73-77; *People v. Clagg* (1961) 197 Cal.App.2d 209, 212; *People v. Saunders* (1910) 13 Cal.App. 743, 747.)

Here, there was sufficient evidence establishing that the fire was of incendiary origin. Defendant correctly points out that the expert, Whipple, formed part of his opinion as to the fire's cause based on defendant's statements, specifically, that the defendant caused the fire. We cannot consider that portion of Whipple's testimony in

6

establishing the corpus delicti. Independent of defendant's statements, however, Whipple eliminated a number of accidental or unintentional potential causes for the fire such as a discarded cigarette, campfires, power lines, railroads, fireworks, burning debris, lightning, kids playing with fire, equipment use, and vehicles. That is the fire was not caused naturally or by accident. There was one set of footprints leading down the embankment where the fire originated and back up to the highway. There was no reasonable explanation for the fire other than someone directly lighting the vegetation or dropping a flame on it. Defendant was the only person walking in the area, she did not try to flag down assistance, and had no reaction to seeing the fire burning. This was sufficient evidence to establish the fire was of incendiary origin--the corpus delicti of arson. Accordingly, trial counsel was not ineffective for failing to make a motion for acquittal on the basis that the corpus delicti was not established.

II

*Unauthorized Fees*

Defendant contends the trial court imposed an unauthorized fee when it required defendant to pay multiple court appointed counsel registration fees under section 987.5 without inquiring about her ability to pay those fees. Alternatively, she contends trial counsel provided ineffective assistance in failing to object to the fee. We find there is a possible reasonable explanation for counsel not having objected to the fee and reject defendant's contention.

The trial court ordered defendant to pay a $25 registration fee at the April 11, 2014, arraignment hearing in this case, case No. 14-510. Both the minute order and reporter's transcript of that hearing reflect the imposition of the fee. The People filed a new misdemeanor complaint, case No. 14-579, against defendant on April 29, 2014. The trial court appointed counsel to represent defendant on that misdemeanor case and assessed a registration fee for that case. The minutes for the hearing in case No. 14-510

7

do not reflect the imposition of an additional registration fee in that case. The People filed a second misdemeanor case, case No. 14-618, and due to a conflict of interest, the court appointed conflict counsel to represent defendant in this case and assessed another registration fee. The court specifically indicated the attorney was appointed in "each of these three cases; and each of the three cases assess the $25 fee normally associated with court appointed counsel appointments. . . ." The minute order for this hearing does not reflect the imposition of an additional registration fee in case No. 14-510. The trial court did not inquire about defendant's ability to pay the fees prior to imposing them and trial counsel did not object to the fees. At sentencing, the trial court found defendant did not have the ability to pay probation related costs or attorneys fees. Neither the court nor counsel addressed the registration fees at sentencing.

Section 987.5 provides that every defendant who is represented by appointed counsel shall be assessed a registration fee of up to $50. (§ 987.5, subd. (a).) The statute goes on to provide: "At the time of appointment of counsel by the court, or upon commencement of representation by the public defender, if prior to court appointment, the defendant shall be asked if he or she is financially able to pay the registration fee or any portion thereof. If the defendant indicates that he or she is able to pay the fee or a portion thereof, the court or public defender shall make an assessment in accordance with ability to pay. No fee shall be assessed against any defendant who asserts that he or she is unable to pay the fee or any portion thereof. No other inquiry concerning the defendant's ability to pay shall be made until proceedings are held pursuant to Section 987.8." (§ 987.5, subd. (b).)

A.     *Multiple Fees*

Initially, defendant contends the trial court improperly imposed multiple registration fees in the case before us (No. MCYKCRF 140510). As delineated above, on the record before us, it is clear the trial court only imposed a single registration fee in this

8

matter.  The minute orders for this case, case No. 14-510 reflect the imposition of the fee at only one hearing.  At the June 3, 2014 hearing, the court specified it had assessed a single fee covering all three separate cases.  Accordingly, we find the trial court did not improperly assess multiple fees in a single case.

B.      *Unauthorized Sentence*

Defendant also claims the registration fee was unauthorized, as the trial court did not inquire about her ability to pay the fee.  The People argue that defendant has forfeited her claim by failing to object in the trial court.  Defendant counters that the court lacked the authority to impose the fee resulting in an unauthorized sentence and therefore no objection was required.  We find the imposition of the fee was not unauthorized; therefore, defendant was required to object to preserve the claim on appeal.

"[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal."  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)  The fee in question was not unauthorized in a jurisdictional sense.  Generally, a fee is " 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case.  Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record."  (*Ibid*.)  The registration fees do not meet this definition, because the fees could be lawfully imposed under circumstances showing an ability to pay, a fact-bound determination.  "In essence, claims deemed [forfeited] on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner," (*ibid*.) which is exactly what happened here:  the fee, which was otherwise permitted, was assessed in a procedurally flawed manner because the trial court did not ask defendant if she had the ability to pay all or a portion of the fee.  Accordingly,

9

the forfeiture exception does not apply.  (*People v. McCullough* (2013) 56 Cal.4th 589, 599.)

Defendant also contends no objection was required to preserve the issue for appeal, citing *People v. Viray* (2005) 134 Cal.App.4th 1186 (*Viray*).  In *Viray*, the appellate court held that a forfeiture of an appellate challenge to an attorney fee reimbursement order cannot "properly be predicated on the failure of a trial attorney to challenge an order concerning his own fees," given the "patent conflict of interest."  (*Id.* at p. 1215, italics omitted.)  The People, in turn, rely on *People v. Aguilar* (2015) 60 Cal.4th 862, in which our Supreme Court held the forfeiture rule applied where defendant failed to object to the amount of counsel fees or to assert the inability to pay in the trial court.  In *Aguilar*, however, our Supreme Court noted the case did not present, "and we therefore do not address, the question whether a challenge to an order for payment of the cost of the services of appointed counsel is forfeited when the failure to raise the challenge at sentencing may be attributable to a conflict of interest on trial counsel's part."  (*Id.* at p. 868, fn. 4.)

The statute at issue here explicitly references the attorney fee statute, and specifically permits defendant to be "given credit for any amounts paid as a registration fee toward any lien or assessment imposed pursuant to Section 987.8."  (§ 987.5, subds. (d) & (b).)  Thus, there may be some circumstances in which the registration fee becomes part of the attorneys fees.  In this scenario, the credit against attorneys fees would create the same conflict discussed in *Viray*, and the failure to object would not result in a forfeiture.  However, the statute does not result directly in an assessment of attorney's fees.  Rather, the assessment is a registration fee.  And, if attorney's fees are not awarded, as they were not in this case, the conflict found in *Viray* which served as the basis for foregoing the forfeiture rule, does not arise.  In that circumstance, the failure to object would result in a forfeiture of the issue on appeal.  But, since defendant has also raised the issue of ineffective assistance of counsel, which requires us to reach the merits of her

10

claim, we will assume without deciding that the general forfeiture rule applies and an objection was required to preserve the claim for appeal.

### C.    *Ineffective Assistance of Counsel*

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy.  To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. . . .  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Contrary to defendant's argument, section 987.5 does not place "an affirmative duty upon the trial court to ask [defendant] if she [is] financially able to pay the registration fee or a portion of it before imposing the fee."  Rather, the statute puts the burden upon either the trial court *or* the public defender to inquire of the defendant and to assess whether he or she is able to pay the fee.  (§ 987.5, subd. (b).)  It is clear that the trial court did not make this inquiry of defendant.  It is not clear, however, that defense counsel did not make the inquiry or the assessment of defendant's ability to pay the fee.  In fact, prior to appointment, the public defender informed the court defendant qualified for appointment of counsel.  This suggests there had been some conversation regarding defendant's finances.  There is no requirement in the statute that the inquiry and

11

assessment by the public defender be made on the record.  We cannot know what conversations defendant and counsel may have had off the record or what information defense counsel had about defendant's ability to pay.  For example, defendant may have indicated she was able to pay the fee because, at the time, she was receiving social security benefits.  The public defender's own inquiry and assessment would have been a rational basis for counsel to choose not to object to the imposition of the fees.  On a silent record, we will not presume that counsel's failure to object rendered his assistance ineffective.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 598.)

DISPOSITION

The judgment is affirmed.

      HULL      , J.

We concur:

    BLEASE    , Acting P. J.

    ROBIE    , J.